975 So.2d 493 (2007)
UNIVERSITY OF FLORIDA BOARD OF TRUSTEES, Appellant,
v.
Olin MORRIS and Annette Morris, as Personal Representatives on behalf of the Estate of Christopher Morris, deceased; Carlton Carmichael Hamilton, M.D.; University of Florida Jacksonville Physicians, Inc.; Winter Haven Hospital, Inc.; Juan Ramon Rivera, M.D.; and Bond & Steele Clinic, P.A., d/b/a Bond Clinic, Appellees.
No. 2D06-4789.
District Court of Appeal of Florida, Second District.
July 27, 2007.
*494 Susan L. Kelsey of Anchors Smith Grimsley, Tallahassee; and Steven L. Brannock of Holland & Knight LLP, Tampa, for Appellant.
D. Paul McCaskill, Maitland, for Appellees Olin Morris and Annette Morris.
No appearance for remaining Appellees.
DAVIS, Judge.
In this interlocutory appeal, the University of Florida Board of Trustees ("UFBOT") challenges the trial court's nonfinal order denying its motion to transfer venue of the wrongful death action brought *495 against it and several other defendants[1] by Olin and Annette Morris. We affirm.
The Morrises' underlying action arose out of the death of their son, Christopher, after he received medical treatment for an apparent drug overdose at the emergency room of Winter Haven Hospital. The Morrises filed their complaint in the Tenth Judicial Circuit in and for Polk County, alleging that the emergency room doctor who treated Christopher was at all times acting in "the course and scope of his employment by, or as an agent of, [UFBOT]." With regard to the issue of venue, the Morrises alleged that "[a]t all times material, the UFBOT has maintained a substantial presence for the transaction of its customary business in Polk County."
UFBOT moved for a change of venue, citing section 768.28(1), Florida Statutes (2006), which provides in part that
any such action against a state university board of trustees shall be brought in the county in which that university's main campus is located or in the county in which the cause of action accrued if the university maintains therein a substantial presence for the transaction of its customary business.
UFBOT argued that the University's main campus is in Alachua County and that it does not maintain a substantial presence in Polk County for the transaction of its customary business.
In support of its motion to transfer venue, UFBOT filed the affidavit of the University's Vice President for Finance and Administration, J. Edward Poppell, who stated that the University's main campus is in Alachua County and gave detailed information relating to the extensive ties the University has to Alachua County. Additionally, UFBOT submitted the affidavit of its Director of Business Operations for Emergency Medicine, Dr. Kelly Gray-Eurom, who attested that UFBOT supplies ten emergency room physicians to Winter Haven Hospital but that it does not maintain a residency program at the hospital.
At the hearing on the motion, the Morrises argued that UFBOT did have a "substantial presence" in Polk County for "the transaction of its customary business." The Morrises maintained that the customary business of UFBOT could be determined by the purpose of each of the state's universities as set out in the Florida Constitution: to achieve excellence through (1) teaching students, (2) advancing research, and (3) providing public service for the benefit of the state's citizens. See Art. IX, § 7(a), Fla. Const. The Morrises argued that UFBOT achieved these goals in Polk County through its contract with Winter Haven Hospital to provide ten emergency room physicians to the hospital.
In denying the motion, the trial court stated:
I think the University of Florida does have a substantial presence here. I tend to agree the Affidavits don't specifically speak to the fact that they don't. And two of the three missions of the University are covered in Polk County on a daily basis. Service to the public in that they are the only emergency room doctors in Winter Haven, in that area, and have been for some time. And two, there is a large research center here that deals with agriculture, and, in particular, citrus and other type activities to give the University of Florida substantial presence here. So I'm going to deny your motion on that grounds [sic].
*496 Pursuant to section 768.28(1), an action brought against UFBOT can only be brought outside Alachua County  where the university's main campus is located  if (1) the action is brought in the county where the cause of action accrued and (2) the university maintains a "substantial presence for the transaction of its customary business" in that county. Here, the Morrises' choice to bring their action in Polk County was based on the undisputed location of where the cause of action accrued. The question then becomes whether UFBOT maintains a substantial presence in Polk County for the transaction of its customary business. The trial court came to the legal conclusion that it does. We review that determination de novo. See PricewaterhouseCoopers LLP v. Cedar Resources, Inc., 761 So.2d 1131, 1133 (Fla. 2d DCA 1999) (reviewing the trial court's ruling on "a motion to transfer venue based on the impropriety in the plaintiff's venue selection" that involved no factual issues or "options over which [the trial court] could exercise discretion" and noting that "[t]he trial court's legal conclusions are reviewed de novo").
Addressing the second half of the question first, we agree with the trial court that UFBOT transacts its customary business in Polk County. "`Transaction of customary business' means that the business transacted in the county must be a part of the corporation's usual and ordinary business and must be continuous in the sense of being distinguishable from mere casual, occasional or isolated transactions." Armstrong v. Times Publ'g Co., 481 So.2d 41, 42 (Fla. 1st DCA 1985) (interpreting the term "transaction of customary business" as used in the general venue provisions of chapter 47, Florida Statutes). One of UFBOT's constitutional purposes is to provide public service for the benefit of the state's citizens. Because the staffing of the emergency room of one of the larger hospitals in Polk County clearly accomplishes that purpose, we can only conclude that such an undertaking amounts to the transaction of UFBOT's customary business. See Univ. of Fla. Bd. of Trs. v. Andrew, 32 Fla. L. Weekly D1404, 2007 WL 1555732 (Fla. 1st DCA May 31, 2007).
Furthermore, we agree that UFBOT's contract to provide emergency medical services to Winter Haven Hospital constitutes a substantial presence in the community. We decline UFBOT's invitation to define substantial by comparing the number of persons, programs, and buildings employed and operated by the university in Polk County with the number in Alachua County, where the university's main campus is located. Id. at D1404, at ___ ("The fact that Appellant's contacts in the remote county may be less substantial than its contacts in its home county is irrelevant. The statute clearly provides that any `substantial' presence will qualify."). If the legislature intended such a definition  which would necessarily dictate a different result in almost every instance  it could have simply stated that venue must be in the county in which the main campus of the university is located. The fact that the statute includes the exception at issue here establishes that other counties may be an appropriate venue, depending on the circumstances. Because no other county would compare with the presence of the university in its home county, it would seem that the plain meaning of the statute requires that we look to the significance of the university's presence in the local community in question. The full-time staffing of the emergency room of one of Polk County's larger hospitals is a significant undertaking by UFBOT and is of considerable impact and importance to the citizens of Polk County, *497 who are dependent on this facility for medical treatment. Because UFBOT's presence in Polk County is substantial and satisfies the requirements of section 768.28(1), we affirm the trial court's order concluding that venue is proper in Polk County.[2]
Affirmed.
WHATLEY, J., Concurs. ALTENBERND, J., Concurs specially.
ALTENBERND, Judge, Concurring.
I fully concur in this opinion. I write only to question the sovereign immunity ramifications that appear to underlie the arrangement between the emergency room physicians at Winter Haven Hospital and UFBOT. If the University of Florida is essentially selling its sovereign immunity for profit to physicians and hospitals that do not otherwise possess sovereign immunity, this is a practice that should be carefully examined.
Like many hospitals, Winter Haven Hospital is not a governmental entity. It is a not-for-profit corporation. Such corporations have never had sovereign immunity in Florida.[3] Moreover, the doctors and nurses who work in these hospitals do not generally have any sovereign immunity protection. Thus patients at not-for-profit hospitals who believe that they have been the victims of medical malpractice are generally entitled to sue the hospital, the doctors, and the nurses without the restrictions that limit lawsuits against governmental entities.
UFBOT has essentially taken over the professional staffing of physicians in the emergency room at Winter Haven Hospital. In so doing, UFBOT has apparently transformed the emergency room doctors into government employees for purposes of section 768.28(9)(a). The practical effect of this change in employment status is that the doctors are no longer personally liable for their ordinary medical negligence. Instead, liability for their errors is now protected by the restrictions of sovereign immunity, including the $100,000 limitation per person contained in section 768.28(5) that can only be overcome if the legislature orders UFBOT to pay a larger amount.
As this appeal demonstrates, UFBOT also argues that this new contractual arrangement requires that claims arising from the treatment of these emergency room doctors be litigated in Alachua County. If this were the law, a medical malpractice claim by a Polk County resident involving both a typical treating physician or hospital nurse in Winter Haven and an emergency room physician at Winter Haven Hospital would proceed against the treating physician or hospital nurse as a claim in the Polk County Circuit Court subject only to the restrictions common to all medical malpractice claims under chapter 766, Florida Statutes. If the Polk County resident had sufficient resolve to bring an additional claim against the emergency room physician, that claim would *498 proceed only against UFBOT in a separate suit, subject to all sovereign immunity restrictions, in Alachua County.
Sovereign immunity in England was originally based on the notion that "the king can do no wrong." Am. Home Assurance Co. v. Nat'l R.R. Passenger Corp., 908 So.2d 459, 471 (Fla.2005). It has never been a doctrine of the common law that translated well to the governance of a democratic republic. Limitations on governmental liability for the torts of government employees may occasionally be necessary to assure the proper functioning of government, but these limitations are often inconsistent with the general rules we use to assure that businesses and professionals in a free market economy actually cover the foreseeable indirect costs that their economic activities generate within our society. See Pagan v. Sarasota County Pub. Hosp. Bd., 884 So.2d 257, 260 (Fla. 2d DCA 2004) (expressing concern about an effort by a nonprofit corporation controlled by a government hospital board to extend sovereign immunity to private physicians).
It is obviously more economic to run any business or profession if one has limited liability. It is easier to compete with other businesses or professionals if one can avoid the costs and liabilities that the competitor cannot avoid. The idea that the government can now enter into favorable leases and contracts based at least in part on the government's ability to expand its umbrella of sovereign immunity to favor some private enterprises over others is an idea that warrants very close scrutiny.
NOTES
[1] Although the other named defendants below do not take part in this appeal, they are named as appellees here pursuant to Florida Rule of Appellate Procedure 9.020(g)(2).
[2] We note that in making its ruling, the trial court included a reference to UFBOT'S agricultural extension activities with the Polk County Cooperative Extension Service. Although we recognize this as an additional presence in the community through which UFBOT transacts its customary business, we conclude that the presence UFBOT achieves through its contract with Winter Haven Hospital alone is sufficient to meet the statutory venue requirements.
[3] See § 617.0302(2), Fla. Stat. (2006); Fritsch v. Rocky Bayou Country Club, Inc., 799 So.2d 433, 435 (Fla. 1st DCA 2001) (stating a not-for-profit corporation "is subject to suit `in its corporate name to the same extent as a natural person'").